# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

IN RE:                           :

                                :        CASE NUMBER: 05-44617- mgd

SALEM HOUSING CORPORATION,     :        CHAPTER 11

                                :

             DEBTOR.     :

**EXPEDITED MOTION OF CHAPTER 11 TRUSTEE FOR ORDERS
(I) APPROVING (A) BIDDING PROCEDURES, (B) PROCEDURES FOR THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, (C) FORM AND MANNER OF NOTICES, AND
(D) ASSET PURCHASE AGREEMENT, INCLUDING BID PROTECTIONS;
(II) SCHEDULING DATES TO CONDUCT AUCTION AND HEARING TO
CONSIDER FINAL APPROVAL OF THE SALE OF SUBSTANTIALLY ALL
OF THE ASSETS OF THE ESTATE; (III) APPROVING SALE;
AND (IV) GRANTING RELATED RELIEF**

Derek  Pierce, as chapter 11 trustee (the "Chapter 11 Trustee") of the chapter 11

bankruptcy estate (the "Estate") of Salem Housing Corporation (the "Debtor"), respectfully

submits this motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), and Rules 2002, 6004,

6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the entry of an order substantially in the form attached hereto as Exhibit A (the "Bidding

Procedures Order") (I) approving the (a) the Bidding Procedures,[1] (b) the Assignment

Procedures, (c) form and manner of notices in connection with Bidding Procedures, and (d) the

Asset Purchase Agreement, including the Bid Protections; (II) scheduling the Sale Hearing; and

(III) granting related relief. By the Motion, the Chapter 11 Trustee also seeks entry of an order at

the Sale Hearing, substantially in the form attached hereto as Exhibit B (the "Sale Order"), (I)

---

[1]  Capitalized terms not defined in this preamble shall have the meaning ascribed to them below, in the Asset Purchase Agreement, or in the Bidding Procedures, as applicable.

approving the sale of substantially all of the Acquired Assets and (II) granting related relief.[2] In

further support of the Motion, the Chapter 11 Trustee states the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested in this Motion is sections 105, 363,

and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

## FACTUAL BACKGROUND

3.      On May 14, 2014, this Court entered an order reopening the Bankruptcy Case

[Docket No. 204] (the "Reopening Date").

4.      On June 24, 2014 (the "Appointment Date"), this Court entered the *Order

Approving Selection of Trustee* [Docket No. 234] appointing Derek Pierce as the Chapter 11

Trustee of the Estate.

5.      The Estate consists primarily of the ownership and operation of the Timberlake

Health & Rehabilitation Center, a 120-bed nursing facility located in Jasper, Jasper County,

Texas (the "Nursing Home").

6.      The Indenture Trustee has a first-priority lien on the Sale Assets (as defined

below) which secures its allowed secured claim in an amount not less than $7,835,000.

## GROUNDS FOR EXPEDITED HEARING

7.      While the Chapter 11 Trustee is not seeking an overall shortening of the notice

period for approval of the Sale itself, the Chapter 11 Trustee requests that the Court conduct an

---

[2] This Motion contains the Chapter 11 Trustee's request for entry of two separate orders: the Bidding Procedures Order and the Sale Order. The Chapter 11 Trustee is seeking entry of the Bidding Procedures Order at the initial hearing to be conducted on this Motion. The Sale Order is requested to be entered at the Sale Hearing.

expedited hearing on March 31, 2015 regarding entry of the Bidding Procedures Order providing

for the establishment of the Bidding Procedures. The financial constraints and regulatory

requirements imposed on the Estate favor the prompt transfer of the Nursing Home to a long-

term owner. Additionally, the Asset Purchase Agreement provides that the Stalking Horse Bidder

(as defined below) may terminate the Asset Purchase Agreement and that Purchaser's Deposit

shall be returned if this Court does not enter an Order approving this Motion within thirty (30)

days after the Asset Purchase Agreement's March 18, 2015, Effective Date.

8.      Concurrently herewith, the Chapter 11 Trustee is seeking a Sale Hearing (defined

below) to be set for April 23, 2015. Accordingly, parties in interest are being provided with over

thirty five (35) days' notice of the Sale itself. Given the circumstances, the Chapter 11 Trustee

submits that expedited consideration of this Motion is appropriate.

## SUMMARY OF THE CHAPTER 11 TRUSTEE'S EFFORTS TO SELL SUBSTANTIALLY ALL OF THE ASSETS OF THE ESTATE

9.      The Chapter 11 Trustee's paramount goal is to maximize the recovery of all

creditor constituencies and other stakeholders. To this end, the Chapter 11 Trustee determined, in

the exercise of his reasonable business judgment and in consultation with his advisors, to

conduct an auction (the "Auction") for the sale (the "Sale") of substantially all of the assets of

the Estate (the "Sale Assets"). Accordingly, the Chapter 11 Trustee commenced a comprehensive

effort, in concert with his advisors, but without engaging and incurring the expense of an outside

broker or investment banker, to solicit interest from potential purchasers of the Sale Assets.

10.     Through this process, the Chapter 11 Trustee has developed, and continues to

develop, a list of prospective purchasers ("Prospective Purchasers") who may be interested in

acquiring the Sale Assets. The Chapter 11 Trustee has received interest from numerous

Prospective Purchasers in the nursing home industry across the country about potentially

acquiring the Sale Assets. As of the filing of this Motion, at least fourteen (14) Prospective

Purchasers have indicated an interest in purchasing the Sale Assets ("Interested Parties") and

have executed confidentiality and nondisclosure agreements allowing them to conduct due

diligence toward making a potential offer to acquire the Sale Assets. The Chapter 11 Trustee has

provided, and will continue to provide, Interested Parties with access to information about the

Nursing Home via an online data room set up by the Chapter 11 Trustee's counsel and by

providing additional requested information and access to the Nursing Home. The Chapter 11

Trustee also will continue his efforts to locate additional Prospective Purchasers and Interested

Parties prior to the Auction.

11.     As result of its marketing efforts, the Chapter 11 Trustee entered into discussions

with two (2) Interested Parties who indicated a serious interest in becoming a stalking horse

bidder in conjunction with the Auction (the "Prospective Stalking Horse Bidders"). Pursuant to

intense and competitive negotiations with the Prospective Stalking Horse Bidders, the Chapter

11 Trustee recently executed an Asset Purchase Agreement (the "Asset Purchase Agreement")

with Charleston Healthcare Group, LLC (the "Stalking Horse Bidder") for the purchase of

substantially all of the Sale Assets (the "Acquired Assets"), as identified more specifically in the

Asset Purchase Agreement. The Asset Purchase Agreement is attached hereto as Exhibit C and is

incorporated herein by reference. The Asset Purchase Agreement remains subject to Court

approval.

### THE ASSET PURCHASE AGREEMENT AND THE BIDDING PROCEDURES

12.     A summary of the Asset Purchase Agreement is set forth as follows:

| | |
|---|---|
| Initial Bid: | The Stalking Horse Bidder's initial bid (the "Initial Bid") is $5,000,000. |
| Good Faith Deposit: | The Stalking Horse Bidder deposited $250,000 in escrow with the |

| | |
|---|---|
| | Chapter 11 Trustee's counsel as a good faith deposit. |
| Acquired Assets: | Substantially all of the assets and rights of the Estate and the Nursing Home. |
| Excluded Assets: | "Excluded Assets" under the Asset Purchase Agreement include Avoidance Actions, certain owned real property (Pineland), contracts and leases, tax refunds, cash, insurance policies, and other assets as more fully set forth in the Asset Purchase Agreement. |
| Bid Protections: | In the event the Stalking Horse Bidder is not the Successful Bidder and is not in breach of the Asset Purchase Agreement, upon the closing of a Sale of the Acquired Assets to another purchaser (an "Alternative Transaction"), the Stalking Horse Bidder shall be entitled to a break up fee (the "Break Up Fee") of three percent (3%) of its Initial Bid, which amount equals $150,000. The Break Up Fee shall be paid from the proceeds of the Alternative Transaction and is binding upon the Estate as a "superpriority" administrative expense.

Additionally, if the Auction Baseline Bid is the Stalking Horse Bidder's Initial Bid, the Initial Bid at the auction must meet or exceed the Break Up Fee (the "Overbid Protection" and, with the Break Up Fee, the "Bid Protections"). |

13.    A summary of the following provisions set for in the Bidding Procedures,

attached hereto as Exhibit D, is set forth below:

| | |
|---|---|
| Auction: | The Chapter 11 Trustee will conduct the Auction on April 21, 2015 at 10:00 a.m. CST. If no Qualified Bids are received by the Bid Deadline, the Chapter 11 Trustee will proceed with the Sale without conducting the Auction. Only the Chapter 11 Trustee, the Indenture Trustee, the Stalking Horse Bidder, and Qualified Bidders, along with their respective representatives and advisors (collectively, the "Permitted Attendees"), shall be permitted to participate in the Auction. |
| Bid Deadline: | Any competing Bid must be submitted in writing to the Chapter 11 Trustee by no later than April 14, 2015 at 5:00 p.m. CST. The Chapter 11 Trustee will not consider any Bids received after the Bid Deadline. |
| Sale Hearing: | April 23, 2015 at 10:30 a.m. EST. |
| Provisions Governing the | To participate in the bidding process and receive access to due |

| Qualifications of Bidders: | diligence materials, a party must submit to the Chapter 11 Trustee an executed confidentiality agreement in form and substance satisfactory to the Chapter 11 Trustee and must comply with all reasonable requests for additional information and due diligence access by the Chapter 11 Trustee or his advisors regarding such potential Qualified Bidder and its contemplated transaction. |
|---|---|
| Provisions Governing Qualified Bids: | A Qualified Bid must be accompanied by a Good Faith Deposit, must be on the same or better terms than those offered in the Asset Purchase Agreement, and must be based on the form of the Asset Purchase Agreement. A Qualified Bid may be for less than all of the Acquired Assets, provided, however, that such Bid must be able to be combined with other Bids to meet all other conditions for a bid to be a Qualified Bid, including that such combination of bids must be on the same or better terms than those offered in the Asset Purchase Agreement and must result in the sale of substantially all of the Sale Assets. A Qualified Bid must designate the executory contracts and leases to be assumed, provide evidence of corporate authority to execute the transaction contemplated by the Bid, and be irrevocable. A Qualified Bid may not contain representations and warranties, covenants or termination rights more onerous than those set forth in the Asset Purchase Agreement (when considering all such provisions as a whole). To be a Qualified Bid, the Bid must be submitted to the parties designated in the Bidding Procedures on or before the Bid Deadline. Only Qualified Bids can participate in the Auction. |
| Overbids: | If the Auction Baseline Bid is the Stalking Horse Bidder's Initial Bid, the Initial Overbid at the Auction must be $150,000 or more. If the Auction Baseline Bid is not the Stalking Horse Bidder's Initial Bid, the Initial Overbid must be $50,000 or more.  After the Initial Overbid, all successive bids must be in increments of $50,000 or more. |
| Modifications of Bidding Qualifications or Auction Procedures: | The Chapter 11 Trustee reserves the right to modify the Bidding Procedures or impose, at or prior to the Auction, different and/or additional terms and conditions on the Sale subject to the Bidding Procedures; provided, however, that such rules are not inconsistent in any material respect with the Bidding Procedures or the Asset Purchase Agreement. |
| Backup Bidders: | If an Auction is conducted, the Bidder (or Bidders) with the next highest or otherwise best Bid or combination of Bids at the Auction shall be required to serve as the backup bidder or backup bidders (collectively, the "Backup Bidder"). The Backup Bidder shall be required to keep its initial Bid or combination of Bids (or if the Backup Bidder submitted one or more Overbids at the |

| | Auction, the final respective Overbid) (the "<u>Backup Bid</u>") open and irrevocable until the earlier of 4:00 p.m. (Prevailing Central Time) on the date that is sixty (60) days after the date of the Auction (the "<u>Outside Backup Date</u>") or the closing of the transaction with the Successful Bidder. |

## RELIEF REQUESTED

14.    By this Motion, the Chapter 11 Trustee first requests entry of the Bidding Procedures Order: (I) approving (a) the use of the Bidding Procedures in connection with the Auction and Sale of the Acquired Assets, (b) the Assignment Procedures and Assignment Notice, (c) the form and manner of the Sale Notice (defined below), (d) the Asset Purchase Agreement; (II) scheduling the Sale Hearing for April 23, 2015 at 10:30 a.m. EST; and (III) granting related relief.

15.    Second, at the Sale Hearing, the Chapter 11 Trustee will request entry of the Sale Order, which will (I) approve the Sale of the Acquired Assets to the Successful Bidder in accordance with the asset purchase agreement between the Chapter 11 Trustee and the Successful Bidder, which Sale shall be free and clear of all liens, claims, encumbrances, and other interests (other than permitted encumbrances and assumed liabilities specifically set forth in the Successful Bid), (II) provide that the Indenture Trustee's liens, claims and encumbrances against the Acquired Assets shall attach to the cash proceeds ultimately attributable to the sale of the Acquired Assets (the "<u>Sale Proceeds</u>"), and (III) grant related relief.

## BASIS FOR RELIEF

### A.    The Sale Is Necessary.

16.    The Chapter 11 Trustee's primary goal is the maximization of the value of its Estate for the benefit of all creditor constituencies and stakeholders. The Bidding Procedures allow the Chapter 11 Trustee to continue a thorough and ongoing sale process for the Sale of the

Sale Assets to further this goal. The Chapter 11 Trustee, in concert with his advisors, has

concluded that the sale strategy outlined herein is the best available strategy for realizing the

maximum value for the Sale Assets, while maximizing certainty of an orderly sale process and

closing.

17.      With respect to the Sale Assets, the Chapter 11 Trustee submits that the

significant duration of the postpetition marketing window has provided, and will continue to

provide, ample opportunity for Prospective Purchasers to conduct diligence and obtain financing

to put forward Qualified Bids. Without the process described in the Motion and Bidding

Procedures, the Chapter 11 Trustee believes, in the exercise of his reasonable business judgment,

that the Estate's creditors and other stakeholders are unlikely to receive maximum value for the

Sale Assets.

**B.      Approval of the Bidding Procedures**

18.      The Bidding Procedures are designed to maximize the value of the Estate, while

ensuring an orderly sale process. The Bidding Procedures describe, among other things, the

procedures for interested parties to access and conduct due diligence, the manner in which

bidders will become Qualified Bidders, the conduct of the Auction, selection and approval of the

Successful Bidder, Backup Bidder, and key deadlines. The Chapter 11 Trustee believes that the

Bidding Procedures afford him the best possible opportunity to maximize the amount received in

the Sale of the Sale Assets, by setting the baseline for additional bids, while facilitating robust

bidding by qualified entities.

**C.      Bid Protections**

19.      Following significant arm's-length negotiations with multiple Interested Parties,

the Chapter 11 Trustee and the Stalking Horse Bidder executed the Asset Purchase Agreement

03017378.8                                          8

pursuant to which the Chapter 11 Trustee agreed to provide the Stalking Horse Bidder with the

Bid Protections. In the event the Stalking Horse Bidder is not the Successful Bidder and is not in

breach of the Asset Purchase Agreement, the Stalking Horse Bidder will be paid the Break Up

Fee from the cash proceeds attributable to the Alternative Transaction as a superpriority

administrative claim within the meaning of sections 364(c)(1) and 503(b)(1) of the Bankruptcy

Code. Additionally, if the Auction Baseline Bid is the Stalking Horse Bidder's Initial Bid, the

Initial Overbid at the auction must meet or exceed the Break Up Fee.

20.     The Chapter 11 Trustee believes that the Bid Protections are fair and reasonable

and were necessary inducements to convince the Stalking Horse Bidder to enter into the Asset

Purchase Agreement and subject its offer to higher or otherwise better offers. Without these

inducements, the Chapter 11 Trustee believes that it would not have been possible to obtain an

initial bid of similar quality, certainty, and amount to the bid embodied in the Asset Purchase

Agreement. In addition, the Overbid Protection is necessary to prevent the Chapter 11 Trustee

being forced to accept a Successful Bid that, after deducting the Break Up Fee, provides less

value to the Estate than the Stalking Horse Bidder's Initial Bid.

**D.     Assumption and Assignment Procedures**

21.     The Chapter 11 Trustee proposes to establish procedures (the "Assignment

Procedures") to be employed in connection with the identification, assumption and assignment of

executory contracts and unexpired leases (collectively, the "Assigned Contracts") to the

Successful Bidder and for notifying counterparties to the Assigned Contracts (the "Contract

Parties") of potential cure amounts (the "Cure Amounts"). Upon a determination of which of the

Estate's executory contracts and unexpired leases will be included in the schedule of Assigned

Contracts, the Chapter 11 Trustee will file with this Court a list identifying such Assigned

Contracts and the necessary Cure Amounts. The Chapter 11 Trustee will also serve all Contract Parties with a notice substantially in the form attached hereto as Exhibit E (the "Assignment Notice"), specifically stating that the Chapter 11 Trustee is seeking to assume and assign to the Successful Bidder(s) the Assigned Contracts. The Assignment Notice shall provide that the deadline for objecting to the assumption and assignment of the Assigned Contracts shall be fourteen (14) days following service of the Assignment Notice.

22.      Unless a Contract Party timely files an objection to a scheduled Cure Amount or to the assumption and assignment of an Assigned Contract, such Contract Party shall be forever barred and estopped from objecting (a) to the Cure Amount and from asserting that any additional amounts are due or defaults exist, (b) that any conditions to assumption and assignment must be satisfied under Assigned Contract before it can be assumed and assigned or that any required consent to assignment has not been given, or (c) that the Successful Bidder (including the Stalking Horse Bidder) has not provided adequate assurance of future performance.

23.      The Chapter 11 Trustee proposes that, in the event of a timely filed objection and dispute regarding: (a) any Cure Amount; (b) the ability of the Successful Bidder (including the Stalking Horse Bidder) to provide adequate assurance of future performance; or (c) any other matter pertaining to assumption or assignment of any of the Assigned Contracts, the Cure Amount shall be paid as soon as reasonably practicable after the Closing, in accordance with the applicable asset purchase agreement following the entry of a final order resolving the dispute and approving the assumption and assignment of such Assigned Contract; provided, however, that the Chapter 11 Trustee (consistent with the applicable asset purchase agreement) should be authorized to consensually resolve with an objecting Contract Party any dispute regarding the

03017378.8                                      10

applicable Cure Amount or assignment to the Successful Bidder without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.      Notice Provisions**

24.      On or before two (2) business days after entry of the Bidding Procedures Order, the Chapter 11 Trustee proposes to serve the sale notice, substantially in the form attached to the hereto as Exhibit F (the "Sale Notice"), on all Prospective Purchasers, creditors who have filed proofs of claim, any entities asserting liens on the Sale Assets, and those parties appearing on the Estate's creditor list.

25.      The Chapter 11 Trustee also proposes, pursuant to Bankruptcy Rules 2002 and 6004, to publish a notice of the Sale in newspapers of general circulation in each of Jasper, Texas and Newton, Texas.

## APPLICABLE AUTHORITY

26.      The Chapter 11 Trustee has conducted a comprehensive process to obtain bids for the Sale Assets, with the assistance of highly skilled advisors, but without engaging and incurring the expense of an outside broker or investment banker, and has determined, in his sound business judgment, that proceeding with the Sale as provided for pursuant to this Motion, is in the best interests of the Estate and its creditors. As this Court has previously recognized, "the proper standard to use when considering a proposed motion to sell is the business judgment test. [and] it is this standard which has been adopted by the vast majority of courts." *In re Diplomat Const., Inc.*, 481 B.R. 215, 218 (Bankr. N.D.Ga. 2012) (MGD) (citations omitted); *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard."). Moreover, in the context of a sale of estate assets, "the trustee's business judgment is

subject to great judicial deference." *In re JFD Enterprises, Inc.*, 2000 WL 560189, *5 (11th Cir.

2000) ("The trustee has ample discretion to administer the estate, including authority to conduct

public or private sales of estate property. . . . [T]he trustee's business judgment is subject to great

judicial deference.") (citations and quotations omitted); *see also In re Soderstrom*, 484 B.R. 874,

881 (M.D. Fla. 2013) ("Generally, trustees have broad discretion in determining, in their own

business judgment, how best to administer the estates to which they owe a fiduciary duty. The

Court will not interfere with the Trustee's business judgment.") (citations and quotations

omitted); *In re Volpe Industries, Inc.*, 2013 WL 4517983, *5 (D.Mass. 2013) ("In deciding

whether to approve a trustee's recommendation of sale, however, the bankruptcy court owes the

trustee a broad amount of deference, seeking only to ensure that the trustee exercised reasonable

'business judgment.' A bankruptcy court's authorization of sale is then, in turn, reviewed only

for abuse of discretion.") (citations omitted).. Thus, this Court should grant the relief requested in

this Motion if the Chapter 11 Trustee demonstrates a sound business justification therefor.

A.    **Approval of the Sale of the Acquired Assets to the Successful Bidder Is Warranted Under Section 363(b) of the Bankruptcy Code.**

27.     Following the auction process described herein, the Chapter 11 Trustee seeks

authority to sell the Acquired Assets to the Successful Bidder on the terms set forth in the

Successful Bid. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1).

28.     Courts routinely authorize a debtor to sell assets outside of the ordinary course of

business pursuant to section 363 of the Bankruptcy Code and prior to confirming a plan of

reorganization if it demonstrates a sound business purpose for doing so. *See, e.g., Meyers v.*

*Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Delaware & Hudson Ry. Co.*, 124 B.R.

169, 176 (D. Del. 1991) (sale of substantially all of debtor's assets outside of reorganization plan

is appropriate when a sound business reason justifies such a sale); *In re GSC, Inc.*, 453 B.R. 132,

155 -156 (Bankr. S.D.N.Y. 2011) ("In addition to a reorganization plan, a section 363(b) sale is

an appropriate means of disposing of the debtor's assets. A debtor may sell substantially all of its

assets as a going concern and later submit a plan of liquidation providing for the distribution of

the proceeds of the sale. This strategy is employed, for example, when there is a need to preserve

the going concern value. The Trustee must establish a good business reason for going forward

with the Sale now rather than proceeding to the Plan. The Trustee, not the Court, [is] in the best

position to make a decision of the most advantageous way to proceed.") (citations and quotations

omitted). Once a court has determined that a sound business justification exists for a sale, the

court must also determine that (a) the trustee has provided the interested parties with adequate

and reasonable notice, (b) the sale price is fair and reasonable, and (c) the purchaser is

proceeding in good faith. *See Delaware & Hudson*, 124 B.R. at 176.

29.     The sale of the Acquired Assets is based on the sound business judgment of the

Chapter 11 Trustee. The Chapter 11 Trustee has determined, after consultation with his advisors,

and in consideration of the ongoing market exploration, that the Sale represents the best possible

strategy for maximizing the recoveries of all creditors and stakeholders. The Chapter 11 Trustee,

in consultation with his advisors, conducted significant arm's-length negotiations with multiple

parties before executing the Asset Purchase Agreement. The Chapter 11 Trustee only entered

into the Asset Purchase Agreement after the marketing of the Acquired Assets and subsequent

negotiations of offers received. The fairness and reasonableness of the consideration to be paid

by the Successful Bidder will be demonstrated by adequate market exposure and an open and fair

auction process—the best means for establishing whether a fair and reasonable price is being paid.

30.      Furthermore, the Stalking Horse Bidder has proceeded in good faith. Both the Chapter 11 Trustee and the Stalking Horse Bidder were represented by experienced advisors in the arm's-length negotiation of the Asset Purchase Agreement. Under these circumstances, the Sale of the Acquired Assets to the Stalking Horse Bidder or such other Successful Bidder as may be identified is fully consistent with the exercise of sound business judgment, and should be approved by the Court pursuant to section 363 of the Bankruptcy Code.

**B.    The Bidding Procedures Are Fair and Are Designed to Maximize the Value Received for the Acquired Assets.**

31.      In order to ensure a fair auction process for the Acquired Assets, the Chapter 11 Trustee will provide adequate notice of the Sale to interested parties and will solicit interest from numerous potential purchasers. The Chapter 11 Trustee submits that the Bidding Procedures are appropriate under section 363 of the Bankruptcy Code to ensure that the bidding process is fair and reasonable and will yield maximum value. The Bidding Procedures establish a competitive bidding process through which all potential bidders are encouraged to participate and submit competing bids for the Sale Assets. The Bidding Procedures also provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Thus, the Chapter 11 Trustee and all parties in interest can be assured that the consideration ultimately received for the Acquired Assets will be fair and reasonable.

32.      At the same time, the Bidding Procedures provide the Chapter 11 Trustee with the opportunity to consider all competing offers and to select, in his reasonable business judgment, the highest or otherwise best offer for the Acquired Assets with minimal execution risk to the

deal in hand with the Stalking Horse Bidder. Accordingly, this Court should approve the Bidding Procedures.

**C.    The Bid Protections Should Be Approved.**

33.    The propriety of bidding incentives in the bankruptcy context requires a showing of some postpetition benefit to the debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999); *see also In re 310 Associates*, 346 F.3d 31, 34 (2nd Cir. 2003) ("Breakup fees are sometimes authorized in the bankruptcy auction sale context because they provide an incentive for an initial bidder to serve as a so-called 'stalking horse,' whose initial research, due diligence, and subsequent bid may encourage later bidders. The breakup fee compensates the stalking horse for the risk it shoulders in being the first bidder.") (citations and quotations omitted).

34.    The Stalking Horse is entitled to the Bid Protections because the Chapter 11 Trustee believes that the Stalking Horse will provide a benefit to the Estate by promoting competitive bidding and researching the value of the assets at issue to increase the likelihood that the selling price reflected the true value of the company and, therefore, the Bid Protections will create such a competitive bidding process. *See O'Brien Envtl. Energy*, 181 F.3d at 536-37.

35.    First, the Bid Protections induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid upon which other bidders may rely. Therefore, the Stalking Horse Bidder has provided a material benefit to the Estate and its creditors by encouraging bidding and increasing the likelihood that the best possible price for the Acquired Assets will be received.

36.    Second, the proposed Bid Protections are the result of an arm's-length negotiated agreement between the Chapter 11 Trustee and the Stalking Horse Bidder. There is no evidence

03017378.8                                          15

or reason to believe that the relationship between the Chapter 11 Trustee and the Stalking Horse Bidder has been tainted by self-dealing or manipulation.

37.     Third, the Chapter 11 Trustee believes that the proposed Break Up Fee is fair and reasonably compensates the Stalking Horse Bidder for taking actions that will benefit the Estate. The Break Up Fee compensates the Stalking Horse Bidder for diligence and professional fees incurred in negotiating the terms of the Asset Purchase Agreement on an expedited timeline, while at the same time ensuring that the Chapter 11 Trustee will be able to conduct a "market-exposed" auction to maximize the benefit of the proposed Sale for creditors. Without such efforts, the Chapter 11 Trustee believes that it is likely that certain potential bidders would not come forward without the implicit assurance provided by the Stalking Horse Bidder's diligence.

38.     Fourth, the Chapter 11 Trustee does not believe that the Bid Protections will have a chilling effect on the sale process. Rather, the Stalking Horse Bidder has increased the likelihood that the best possible price for the Acquired Assets will be received, by permitting other Qualified Bidders to rely on the diligence performed by the Stalking Horse Bidder and by allowing Qualified Bidders to utilize the Asset Purchase Agreement as a platform for negotiations and modifications in the context of a competitive bidding process.

**D.   The Acquired Assets Should Be Sold Free and Clear of Interests Pursuant to Section 363(f).**

39.     The Chapter 11 Trustee seeks authority to sell the Acquired Assets free and clear of any interests in such property. Section 363(f) of the Bankruptcy Code provides:

The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

(1)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)   such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11  U.S.C. § 363(f).

40.    Because section 363(f) of the Bankruptcy Code is phrased in the disjunctive, when proceeding pursuant to section 363(b), it is only necessary to meet one of the five conditions of section 363(f). The Debtor's secured lender, the Bank of New York Mellon Trust Company, N.A., as successor indenture trustee (the "Indenture Trustee"), which has the largest claim secured by a first-priority lien on the Sale Assets, has agreed to release its liens, claims and encumbrances against the Acquired Assets upon a closing of the Sale to the Stalking Horse Bidder or other successful purchaser under the Bid Procedures, with such liens, claims and encumbrances to attach to the Sale Proceeds in the same order of priority. Accordingly, the Chapter 11 Trustee has satisfied the requirements of section 363(f) with respect to the Indenture Trustee. With respect to any other entity asserting a lien, claim, or encumbrance against the Acquired Assets, the Chapter 11 Trustee anticipates that it will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. Any entities holding liens on the Acquired Assets will receive notice of this Motion and the Sale Notice, and such entities will be deemed to consent if they do not object. *See Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same). Furthermore, any such lien will attach to the proceeds of the Sale and, therefore, to the extent such proceeds are in an amount greater than the aggregate value of all liens, section 363(f)(3) is likewise satisfied. Accordingly,

the Chapter 11 Trustee may sell the Acquired Assets free and clear of all liens, claims, and encumbrances.

41.     The Chapter 11 Trustee also submits that it is appropriate to sell the Acquired Assets free and clear of successor liability. Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtor. Courts frequently hold that a buyer of a debtor's assets pursuant to a Bankruptcy Code section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., Douglas v. Stamco*, 363 Fed.Appx. 100, 2010 WL 337043 (2nd Cir. 2010) (sale of assets pursuant to section 363(f) barred successor liability claims); *Cibulka v. Trans World Airlines, Inc.*, 92 Fed.Appx. 366 (8th Cir. 2004) (same); *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) (same); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a section 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

42.     The purpose of an order purporting to authorize the transfer of assets free and clear of all liens, claims, encumbrances, and other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, the Chapter 11 Trustee runs the risk that potential bidders may not enter the Auction or, if they did, would do so with reduced bid amounts. To that end, the Successful Bidder should not be liable under any theory of successor liability relating to the Nursing Home, but should hold the Acquired Assets free and clear, following successful transition of the Acquired Assets.

### E. Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

43.     The Chapter 11 Trustee seeks authority to assume and assign those executory contracts and unexpired leases designated by the Successful Bidder subject to the Assignment Procedures set forth above and utilizing the Assignment Notice. Section 365 of the Bankruptcy Code authorizes a chapter 11 trustee to assume and/or assign executory contracts and unexpired leases, subject to the approval of the bankruptcy court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. A chapter 11 trustee's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See In re Gardinier, Inc.*, 831 F.2d 974, 976 (11th Cir. 1987) ("The language of the code is permissive; it is up to the trustee to decide whether to assume or reject an executory contract. . . . [S]ince courts review a trustee's decision to assume or reject a contract under a traditional 'business judgment' standard, the scope of review in this area is narrow.") (internal citations and quotations omitted); *cited with approval by In re Chira*, 567 F.3d 1307, 1313 (11th Cir. 2009); *In re Weaver Oil Co., Inc.*, 2008 WL 8202063, *2 (Bankr. N.D.Fla. 2008) ("When reviewing the decision to assume or reject an executory contract, most courts, including those in the Eleventh Circuit, apply the 'business judgment rule.' . . . Ordinarily, the decision to assume or reject an executory contract is left entirely to the [trustee]. . . . The Bankruptcy Court will generally approve the rejection of an executory contract unless it finds that the [Trustee]'s conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, whim, or caprice.") (internal citations and quotations omitted).

44.     Once an executory contract is assumed, a chapter 11 trustee may elect to assign

such contract. *See, e.g., In re Rickel Home Center. Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he

Code generally favors free assignability as a means to maximize the value of the debtor's

estate"). Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an

executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of

future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of

future performance" depends on the facts and circumstances of each case, but should be given a

"practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009);

EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.),

139 B.R. 585, 593 (S.D.N.Y. 1992).

45.     Adequate assurance may be provided by demonstrating the assignee's financial

health and experience in managing the type of enterprise or property assigned. *See In re Bygaph,

Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when

prospective assignee of lease from debtor has financial resources and has expressed willingness

to devote sufficient funding to business to give it strong likelihood of succeeding).

46.     To facilitate and effect the Sale, the Chapter 11 Trustee requests approval under

section 365 of the Bankruptcy Code for the assumption and assignment of the Assigned

Contracts to the Stalking Horse Bidder or another Successful Bidder pursuant to the Assignment

Procedures. The Chapter 11 Trustee further requests that the Sale Order provide that the

Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of,

the Successful Bidder, notwithstanding any provisions in the Assigned Contracts, including those

described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such

assignment. The Chapter 11 Trustee contemplates that the Successful Bidder will be able to

provide adequate assurance of future performance in connection with any Assigned Contract because such Successful Bidder must submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the Sale. Furthermore, to the extent that any defaults exist under any Assigned Contract, the Chapter 11 Trustee or the Successful Bidder will cure any such default prior to such assumption and assignment. Accordingly, the Chapter 11 Trustee submits that implementation of the Assignment Procedures is appropriate.

**F.    The Successful Bidder Is Entitled to the Protections of Section 363(m).**

47.    The Successful Bidder (including the Stalking Horse Bidder) for the Acquired Assets should be entitled to an order incorporating the protection of section 363(m) of the Bankruptcy Code. That subsection protects a good faith purchaser as one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D. N.J. May 11, 2007). Assuming the Stalking Horse Bidder is the Successful Bidder, the Asset Purchase Agreement was negotiated at arm's-length, with both parties represented by their own counsel. Similarly, the Chapter 11 Trustee expects to show at the Sale Hearing that any other Successful Bidder similarly conducted itself in good faith. Accordingly, the Chapter 11 Trustee requests that the Sale Order include a provision that the Successful Bidder for the Acquired Assets is a "good faith'' purchaser within the meaning of section 363(m) of the Bankruptcy Code. Furniture Brands submits that such protection will ensure that the maximum price will be received for the Acquired Assets.

**G.    Waiver of 14-Day Stay on Closing**

48.    Bankruptcy Rules 6004(h) and 6006(d) respectively provide that an order authorizing the use, sale, or lease of property and an order authorizing the assumption and

assignment of executory contracts or unexpired leases will be stayed for fourteen days after entry of such approval orders unless the court orders otherwise. Because of the need to close the transactions contemplated herein as promptly as possible, the Chapter 11 Trustee requests that the Bidding Procedures and Sale Orders provide for a waiver of the fourteen-day stays provided for under Bankruptcy Rules 6004(h) and 6006(d).

## **NO PRIOR REQUEST**

49.     No prior application for the relief sought in this Motion has been made to this or any other court in connection with this Bankruptcy Case.

**WHEREFORE, PREMISES CONSIDERED**, the Chapter 11 Trustee respectfully requests the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated March 19, 2015.

/s/ *Robert K. Ozols*
Robert K. Ozols
Kevin C. Gray
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Phone: (205) 254-1000
Fax:    (205) 254-1999
E-mail: rozols@maynardcooper.com
          kgray@maynardcooper.com
*Counsel for the Chapter 11 Trustee*

03017378.8